Hillsborough,
No. 4892.

JAMES LALOS & a. *v.* WILLIAM R. TICKLER JR. & a.

Argued April 4, 1961.

Decided May 31, 1961.

*Broderick, Manning & Sullivan* (*Mr. Broderick* orally), for the plaintiffs.

*Devine, Millimet & McDonough* (*Mr. Millimet* orally), for the defendant Allstate Insurance Co.

*McLane, Carleton, Graf, Greene & Brown* (*Mr. Greene* orally), for the defendant American Mutual Liability Insurance Co.

*Lemieux & St. Pierre* for the defendant Tickler, furnished no brief.

BLANDIN, J. The first article in the disputed Allstate Insurance Co. policy is the coverage provision on page 1 at the very beginning of the instrument. In this article, the defendant Allstate contracts to insure the defendant Tickler against all damages which Tickler shall be legally obligated to pay on account of the "ownership, maintenance or use . . . of the owned automobile, a substitute automobile or a non-owned automobile." On page 2 of the policy appears Article X with the heading in large letters, "Definitions," under which the insured and the three classes of automobiles covered by Article I are defined as follows:

"1. The unqualified word 'insured', wherever used with respect to the liability insurance, includes the named insured, spouse, and: (a) with respect to the owned automobile or a substitute automobile, any other person or organization legally responsible for its use, provided the actual use of the automobile is by the named insured or spouse or with the permission of either; and (b) with respect to any non-owned automobile, any other person or organization, not owning or hiring it, but legally responsible for its use by the named insured or spouse.

"2. 'Owned automobile' means the vehicle described on the Supplement Page, including its equipment. A trailer shall not be deemed to be equipment.

"3. 'Substitute automobile' means an automobile not owned by the named insured but temporarily used as the substitute for the owned automobile while withdrawn from normal use because of its breakdown, repair, servicing, loss or destruction.

"4. 'Non-owned automobile' means any automobile other than: (a) the one described on the Supplement Page, (b) a substitute automobile, or (c) an automobile owned by, hired as a part of a frequent use of hired automobiles by, or furnished for regular use to, the named insured or a member of his household, except a servant." Admittedly the panel truck driven by Tickler and in-

volved in the accident was not his "owned automobile," or a "substitute automobile," as defined above. We come then to the question of whether it was a "non-owned automobile." The Court has found upon undisputed evidence that the panel truck was "furnished for regular use to Mr. Tickler," the named insured. Under Article X it would appear this truck was not covered.

The plaintiff seeks to avoid this result by arguing that none of the definitions under Article X apply and that the defendant Allstate has undertaken to insure Tickler when driving this truck notwithstanding the exclusions, because the policy is really one of "excess insurance." Paragraph 9, under the head of "The following conditions apply to the coverages indicated" provides in part: "With respect to a . . . non-owned automobile Coverages A and B shall be excess insurance over any other collectible liability insurance of any kind available to the insured . . . . " Under such a policy the plaintiff contends that Allstate is liable under Article I to pay any loss if it "exceeds the limits of another insurance policy." In summary, the plaintiff says Allstate has agreed to act as "surety" for Tickler and "to pay any claims in excess of $5,000.00." The argument of the plaintiffs, though able and ingenious, is in effect that, under Article I, Allstate has contracted to insure for the premium for insuring one automobile, not only Tickler's own car but all others, and pay all damages in excess of the coverage of $5,000 provided by the American Mutual Insurance Company arising out of their "ownership, maintenance or use" by Tickler.

The interpretation of this policy is of course for our court. *Pettee* v. *Chapter*, 86 N. H. 419, 424. It is to be considered as a whole, in the light of all the circumstances, and interpreted as a reasonable person in the position of the insured should understand it. *Farm Bureau Ins. Co.* v. *Manson*, 94 N. H. 389, 392. Bearing this in mind and the frequency with which verdicts in automobile accidents now far exceed the $5,000 limit, covered by the defendant American Mutual, as well as the various illustrations and other forms of self-advertising in the policy to which the plaintiff directs our attention, we hold that the parties contemplated no such sweeping and extraordinary coverage as the plaintiffs' interpretation demands. We are content with the Trial Court's implicit finding that the parties intended the definitions under Article X to apply to Article I, the coverage clause and that they also extended to the excess insurance provisions. *Newcomb* v. *Ray*, 99 N. H.

463, 465. It follows that the truck involved here was not a "non-owned" automobile covered by the policy.

The case of *Hunt* v. *Association*, 68 N. H. 305, relied upon by the plaintiffs, is clearly distinguishable from the present situation. In the *Hunt* case, the facts were agreed upon as follows: A insured B against loss by fire, C reinsured A for one-third of A's risk and the defendant reinsured C for one-half of its risk. A loss occurred and C having become insolvent, the court held that the defendant was bound to pay its full share or one-sixth of the loss to A, without waiting to see what amount of the damages the insolvent could satisfy. This is an indemnity contract plain and unqualified between C and the defendant for the benefit of B as to the property insured. The defendant Allstate did not agree to indemnify any other insurer against any loss, but rather to indemnify Tickler against loss in excess of other coverage available to him, provided such loss arose out of a risk covered by the Allstate policy. The *Hunt* case appears not in point in the case before us.

The plaintiffs also excepted to the Court's refusal to grant their requests for a finding that a total figure of $27,500 was a reasonable value to set on their claims and that the defendant American Mutual may reasonably "compromise or settle the claims of the plaintiffs for any sums" within the above limits and thereby be released from further liability. The record convinces us that the Court was not compelled as a matter of law to grant their request that the specified value of $27,500 was reasonable or to rule that the defendant American Mutual must enter into the agreement suggested by the plaintiffs.

Finally the plaintiffs claim the Court erred in denying their requests for findings of fact and rulings of law made at the close of the hearing after their motion to reopen the transferred case had been granted. These requests were in substance that Allstate is estopped to deny its obligation to satisfy any judgment in excess of the $5,000 coverage furnished by American Mutual because it assumed the defense of the civil actions and also failed to act seasonably to petition for a declaratory judgment. An examination of the record convinces us that the Court's finding that Allstate did not assume the defense of the civil actions is supported, and therefore it is upheld.

With regard to the failure of Allstate to seek a declaratory judgment, nothing appears in the statute (RSA 491:22) to suggest

that there is a legal duty on an insurer to invoke such a remedy. There is no such legal duty. While more dispatch in the entire conduct of this case would certainly have been in the interests of justice, no legal obligation was violated by the defendant Allstate, and the Court's action denying this request was proper.

What we have decided renders unnecessary discussion of other issues raised. Upon examination it appears that the Court's rulings upon the remaining exceptions of the plaintiffs disclose no error. The order is

*Exceptions overruled.*

All concurred.