[No. 1129-3.   Division Three.   July 2, 1975.]

Farmers Insurance Co. of Washington, *Appellant*, v. U. S. F. & G. Co., *et al, Respondents*.

*Robert A. Southwell* (of *Malott & Southwell*), for appellant.

*Eugene I. Annis* (of *Lukins & Annis*), *Lawrence Cary Smith, Smith, Smith & Smith, Henry F. Savage* (of *Savage & Nuxoll*), *Jack Bennett* (of *Bennett & Waldo*), and *Brian Kennedy* (of *Turner, Stoeve, Gagliardi & Kennedy*), for respondents.

McINTURFF, C.J.—This is a declaratory judgment action brought by Farmers Insurance Co. of Washington (Farmers) seeking an interpretation of the term "owner" as used in the nonowned automobile clause in their policy. The trial court held that the word "owner" would include one who has possession of a vehicle; and that since the driver had permission of the one in possession of the vehicle to drive it, under the policy he had permission of the owner. Farmers appeals.

In 1971 defendant Swanneck consigned his 1965 Oldsmobile for the purpose of sale to defendant Kroske, who operated a used car business. Other than his desire to have the automobile sold, Swanneck expressed nothing regarding its use by Kroske. Subsequently, Kroske loaned Swanneck's automobile to defendant Linda Warn to use temporarily while her automobile was being repaired. Kroske expressed no restrictions to Warn regarding its use. Warn used Swanneck's car to go to a birthday party and while there became too inebriated to return home. She asked defendant Haabey to drive her car home. While returning the automobile to Warn's home, Haabey, accompanied by the defendant Hensley, had an accident in which Hensley was seriously injured. Hensley made a claim against Haabey—who was insured by Farmers—for his injuries.

The "ownership, maintenance or use" clause in Haabey's policy, relating to liability, provided that Farmers would pay all damages the insured becomes legally obligated to

pay arising out of the "ownership, maintenance or use, . . . of the described automobile or a non-owned automobile."[1]

The policy defined the term *"insured"* within the non-owned automobile clause to include:

(b) with respect to a non-owned automobile,
(1) the named insured or relative, and
(2) any other person or organization not owning or hiring such automobile if legally responsible for its use by the named insured or a relative, but only in the event such named insured or relative is legally liable for the occurrence; provided the actual use of the non-owned automobile by the persons in (1) and (2) above is *with the permission of the owner.*

(Italics ours.)

The broad issue is whether the permission provision was intended to include situations where the insured is driving an auto unaware that he is doing so without the "permission of the owner."[2]

---

[1]The "ownership, maintenance and use" clause is designed to protect the named insured against all claims for damages arising out of the operation of any owned or nonowned automobile. *McMichael v. American Ins. Co.*, 351 F.2d 665, 668 (8th Cir. 1965); 12 G. Couch, *Insurance* § 45:67, at 155-56 (2d R. Anderson ed. 1964) (hereinafter cited *Couch on Insurance*). To fall within the coverage provided by this clause, title to the automobile legal or equitable is not necessary; legal possession or responsibility for its use is sufficient where there are no questions regarding the formalities of title transfer. *Couch on Insurance* § 45:62, at 151.

[2]The following rules are applicable in the interpretation of insurance policies. An insurance policy is a written contract between the insured and the insurer. *Sears, Roebuck & Co. v. Hartford Accident & Indem. Co.*, 50 Wn.2d 443, 449, 313 P.2d 347 (1957); *accord, Vandivort Constr. Co. v. Seattle Tennis Club*, 11 Wn. App. 303, 310, 522 P.2d 198 (1974). Insurance contracts are to be interpreted to give effect to the intent of the parties, *Thomas v. Grange Ins. Ass'n*, 5 Wn. App. 820, 822, 490 P.2d 1316 (1971), and cannot be read in a vacuum. *Ames v. Baker*, 68 Wn.2d 713, 415 P.2d 74 (1966). In construing an exclusionary clause in an insurance policy the purpose of the insurer in inserting the particular clause must be considered. *State Farm Mut. Auto. Ins. Co. v. Phillips*, 2 Wn. App. 169, 177, 457 P.2d 189, 46 A.L.R.3d 1013 (1970). An exclusionary clause is to be construed in favor of the insured and most strongly against the company that has written the policy. *Dickson v.*

Farmers contends that the word "owner" as used in the insurance policy does not mean any person who has possession of the vehicle but means the title owner. It is emphasized that the terms of the contract are not ambiguous and the language is plain, citing *Phillips v. Government Employees Ins. Co.*, 258 F. Supp. 114 (E.D. Tenn. 1966), *rev'd*, 395 F.2d 166 (6th Cir. 1968). Farmers further argues that the term "owner" generally applies to one having a proprietary interest beyond that of a mere bailee in the context of an automobile insurance policy, citing *Civil Serv. Employees Ins. Co. v. Roberts*, 10 Ariz. App. 512, 460 P.2d 48 (1969). It is claimed that the word "owner" as used in the framework of an automobile liability insurance policy is the same as the statutory definition of "owner" in RCW 46.04.380, citing *Beatty v. Western Pac. Ins. Co.*, 74 Wn.2d 530, 445 P.2d 325 (1968). Finally, Farmers urges that the court is legislating by interpreting the term.

We are concerned primarily with the nonownership clause. Its purpose is to add to, rather than reduce, the coverage provided by other provisions of the policy.[3] The clause provides the insured coverage during infrequent or occasional use of a nonowned automobile.[4] The permission provision of the nonownership clause was added to restrict

---

*United States Fidelity & Guar. Co.*, 77 Wn.2d 785, 789, 466 P.2d 515 (1970). But this rule should not be permitted to be used to make a plain agreement ambiguous for the purpose of construing it in favor of the insured. *West American Ins. Co. v. State Farm Mut. Auto. Ins. Co.*, 80 Wn.2d 38, 44, 491 P.2d 641 (1971). Any ambiguities in an exclusionary clause must be construed most favorably to the insured. *Dairyland Ins. Co. v. Ward*, 83 Wn.2d 353, 358, 517 P.2d 966 (1974). Language in insurance policies is to be interpreted in a manner in which it would be understood by the *average* man, and not in a technical sense. *Glen Falls Ins. Co. v. Vietzke*, 82 Wn.2d 122, 125, 508 P.2d 608 (1973); *Scales v. Skagit County Medical Bureau*, 6 Wn. App. 68, 70, 491 P.2d 1338 (1971). And that interpretation most favorable to the insured must be applied if the policy is fairly susceptible to two different interpretations, even though a different or technical meaning may have been intended by the insured. *Glen Falls Ins. Co. v. Vietzke, supra* at 126; see *Rowland v. State Farm Mut. Auto. Ins. Co.*, 9 Wn. App. 460, 464, 512 P.2d 1129 (1973).

[3]*Couch on Insurance* § 45:250, at 282.

[4]*Couch on Insurance* §§ 45:238, 45:250.

coverage[5] in the aftermath of two cases[6] in which children of the named insured stole automobiles and the insureds were held liable under the nonowned auto coverage as a result of the accidents. Thus the permission requirement was designed specifically to preclude coverage where a stolen automobile was involved or where the insured had reason to know that he did not have the permission of the title owner to drive the automobile.

A purchaser of liability insurance does not contemplate driving a nonowned car without the permission of the owner. The average person purchasing such insurance and the insurer recognize the insured's need to be protected in situations where he is driving another's automobile in the honest belief that he has the owner's permission.[7] The coverage is intended to protect drivers who are uncertain whether another's automobile is covered by insurance.[8] Although the purposes of the "ownership, use and maintenance" clause and the "nonownership" clause are similar, there exists an inconsistency as nothing relating to permission is stated in the former. If parts of the same writing are inconsistent, they should be construed so as to harmonize with one another.[9]

■■ We must determine whether the term "owner" is ambiguous. If the language of a contract is not ambiguous its meaning and the intent of the parties are to be determined from its language alone, without resort to other rules of construction.[10] A written instrument is ambiguous

---

[5]*McMichael v. American Ins. Co.*, 351 F.2d 665, 668 (8th Cir. 1965).

[6]*Home Indem. Co. v. Ware*, 285 F.2d 852 (3d Cir. 1960); *Sperling v. Great Am. Indem. Co.*, 7 N.Y.2d 442, 166 N.E.2d 482, 199 N.Y.S.2d 465 (1960).

[7]*Accord, American Motorists Ins. Co. v. LaCourse*, 314 A.2d 813, 816 (Me. 1974).

[8]*Carlsson v. Pennsylvania Gen. Ins. Co.*, 214 Pa. Super. 479, 257 A.2d 861, 865 (1969); cf. *Couch on Insurance* § 45:238, at 275.

[9]*Grant County Constructors v. E.V. Lane Corp.*, 77 Wn.2d 110, 120, 459 P.2d 947 (1969).

[10]*Hastings v. Continental Food Sales, Inc.*, 60 Wn.2d 820, 823, 376 P.2d 436 (1962); *Rydman v. Martinolich Shipbuilding Corp.*, 13 Wn. App. 150, 153, 534 P.2d 62 (1975).

when its terms are uncertain or capable of being understood in more than one manner.[11] The term is not defined in the policy. The term is, however, a nomen generalissimum and its meaning should be gathered from the context in which it is used.[12] The term may have many meanings depending upon the circumstances in which it is used.

73 C.J.S. *Property* § 13(c), at 188 (1951) defines the term "owner" as applied to personal property to include the following:

> the person to whom a chattel belongs; the person who has the possession and control of a chattel; the person in possession and control of any article of personalty; one who has power of disposition, care, control, and management; one in possession, having care, control, and management; one having the right to possession and control; the person in whom legal title is vested.[13]

■ We find that the word "owner" is ambiguous and the average person may assign it to a wide variety of connotations other than the technical one, *i.e.*, title owner, urged by plaintiff. Referring to the rules of construction, we note with particular emphasis that any ambiguities in an exclusionary clause must be construed most favorably to the insured;[14] that language in insurance policies is to be interpreted in a manner in which it would be understood by the *average* man, and not in a technical sense;[15] that an interpretation most favorable to the insured must be applied if the policy is fairly susceptible to two different interpretations, even though a different or technical mean-

[11]*Rydman v. Martinolich Shipbuilding Corp.*, 13 Wn. App. 150, 534 P.2d 62 (1975).

[12]Black's Law Dictionary 1259 (4th ed. rev. 1968).

[13]The fact that the word "owner" may have different meanings in different contexts has been recognized by our court. *See Smith v. Craver*, 89 Wash. 243, 247, 154 P. 156 (1916) (a mortgagor in possession is an owner).

[14]*Dairyland Ins. Co. v. Ward*, 83 Wn.2d 353, 358, 517 P.2d 966 (1974).

[15]*Glen Falls Ins. Co. v. Vietzke*, 82 Wn.2d 122, 508 P.2d 608 (1973); *Scales v. Skagit County Medical Bureau*, 6 Wn. App. 68, 70, 491 P.2d 1338 (1971).

ing may have been intended by the insurer;[16] and that insurance policies should be construed to maximize coverage in a fashion consonant with fairness to the insurer.[17]

Aside from the fact that an ambiguity in the term is present there are other practical considerations to be weighed in reaching our decision. First, the insurer is not providing coverage for any risk not anticipated; we are not dealing with a stolen automobile, nor one which was loaned to another contrary to the express desire of the owner.[18] Mr. Haabey has paid premiums to Farmers to be protected against liability for injuries arising out of his use of a nonowned automobile. Secondly, it would not be workable for the driver of a nonowned automobile to determine in all instances whether he had the express or implied permission of the title owner, legal or equitable, to drive the car. Although there is authority to the contrary,[19] we choose to follow the rationale adopted in *Carlsson v. Pennsylvania Gen. Ins. Co.*, 214 Pa. Super. 479, 257 A.2d 861 (1969), where the owner of the automobile had loaned it to his son with the express restriction that it be operated in the Pittsburgh area. In spite of this prohibition, the son took the car to another town and loaned it to a friend. The friend while driving the automobile was involved in an accident and he

[16]*Glen Falls Ins. Co. v. Vietzke*, 82 Wn.2d 122, 126, 508 P.2d 608 (1973); see *Rowland v. State Farm Mut. Auto. Ins. Co.*, 9 Wn. App. 460, 512 P.2d 1129 (1973).

[17]*Accord, Oregon Auto. Ins. Co. v. Salzberg*, 85 Wn.2d 372, 376-77, 535 P.2d 816 (1975).

[18]*Phillips v. Government Employees Ins. Co.*, 258 F. Supp. 114 (E.D. Tenn. 1966), *rev'd*, 395 F.2d 166 (6th Cir. 1968).

[19]*Phillips v. Government Employees Ins. Co., supra* (the term "owner" means title owner and is not ambiguous); *Civil Serv. Employees Ins. Co. v. Roberts*, 10 Ariz. App. 512, 460 P.2d 48 (1969); see *Bright v. Ohio Cas. Ins. Co.*, 444 F.2d 1341 (6th Cir. 1971); *Jones v. Indiana Lumbermen's Mut. Ins. Co.*, 161 So. 2d 445 (La. App. 1964); cf. *State Farm Mut. Auto Ins. Co. v. Mohan*, 228 N.E.2d 283 (Ill. App. 1967) (policy required permission of the owner or one in lawful possession); *State Auto. Mut. Ins. Co. v. Williams*, 268 Md. 535, 302 A.2d 627 (1973) (policy required permission of the owner or one reasonably believed to be the owner).

sought to recover under his father's automobile policy. The *Carlsson* court concluded that the insurance company was liable and stated at page 488:

> We find, therefore that the insurance company in referring to the consent of the "owner" in nonowned automobile coverage included therein the consent of the possessor of the automobile, so long as the borrower reasonably believes that the possessor is the owner or has the permission of the owner to lend the automobile to third persons.[20]

■ In view of the rules of construction and our determination that the term "owner" is ambiguous as used in Farmers policy, we find that the term may include both the title owner, legal or equitable, as well as the possessor of the automobile so long as the one driving the auto reasonably believes that he has the permission of the owner to drive the vehicle. To hold otherwise would necessitate inquiry concerning who was the owner each time the car of another was driven, absent knowledge to the contrary. One could never have the secure knowledge that he was driving with permission of the owner. He would always be driving the car of another at his peril.

Farmers contention that the definition of owner in RCW 46.04.380 is controlling lacks merit. That title concerns the motor vehicle code and does not deal with insurance which is found in RCW 48.

Finally, it is urged that the court by so holding would be legislating. The legislature has not defined the term "owner" within the insurance code and the insurance policy does not define it. Hence, it is incumbent upon the court

---

[20]*Accord, State Farm Mut. Auto. Ins. Co. v. Zurich Am. Ins. Co.,* 118 N.J. Super. 84, 286 A.2d 517, 523 (1972) (quoting with approval). We note that the *Carlsson* opinion was in part based upon a state statute requiring that in order for a policy of insurance to be valid it must insure motor vehicles not owned by the insured. We have no similar statute in the state of Washington. We also note that the opinion was based upon *Phillips v. Government Employees Ins. Co.,* 258 F. Supp. 114 (E.D. Tenn. 1966), *rev'd,* 395 F.2d 166 (6th Cir. 1968).

844

to interpret the meaning of that term, keeping in mind the many rules of construction enunciated in this opinion.

The remaining assignments of error, not argued in the brief, will not be considered.[21]

Judgment of the superior court is affirmed.

GREEN, J., concurs.

MUNSON, J., concurs in the result.

[21]*Rose v. Riedinger*, 13 Wn. App. 222, 534 P.2d 146 (1975).